NELSON D. BAIRD v. EDWARD A. ABBEY AND PATRICK
TENNYSON.

*Mortgage—Payment—Bill to foreclose—Commission of crime—Evidence to establish.*

1. While in a civil case it is only necessary to establish the commission of a crime by a preponderance of evidence, there should, however, be testimony of sufficient weight and character to satisfy the court or jury that a crime has been committed.

2. This case involves the question of the payment or non-payment of a mortgage note, and the Court find such payment to have been made. No questions of law are involved.

Appeal from Monroe. (Joslin, J.) Argued October 26, 1888. Decided January 18, 1889.

Bill to foreclose a mortgage. Defendant Tennyson appeals. Reversed, and bill dismissed. The facts are stated in the opinion.

*Sawyer & Knowlton,* for complainant.

*Grosvenor, Bragdon & Grosvenor,* for appellant.

MORSE, J. On October 10, 1883, the defendant Edward A. Abbey executed and delivered to the complainant a mortgage for $2,700 upon a certain piece of land, situate in the township of Milan, in Monroe county. This mortgage was given to secure the payment of fourteen promissory notes. The first note was for $150, payable, with interest at 7 per cent. on the whole sum, April 1, 1885. Then followed twelve $200 notes, payable one in each year thereafter, and the last note, of $150, payable on April 1, 1898. The maker of these notes, by the terms of the mortgage, could pay $200 or more at any time

upon the principal sum. The mortgage could be foreclosed for failure to pay any part of the principal or interest due, and upon such failure the mortgagee or his assigns could, at his option, declare the whole sum due, and foreclose for the same. The defendant Abbey made no payment on the mortgage, and soon after he gave it sold the land to defendant Tennyson, who assumed the payment of it.

The complainant filed his bill to foreclose, April 23, 1886, claiming default in payment of an installment, and electing to declare the whole balance due, which at the date of the filing of the bill was claimed to be $2,581.15. The bill admits the payment of the first three notes, but denies the payment of the note for $200 falling due April 1, 1888, except interest, which is admitted to be paid up to April 1, 1885. The bill alleges that Tennyson has obtained possession of this note in some manner unknown to complainant, and retains the same, falsely and fraudulently pretending and claiming that the same has been paid.

The defendants answer that Tennyson has paid on said mortgage and notes the following sums: March 31, 1885, $242.20; June 14, 1884, $366.60; May 19, 1885, $200; and has paid the following notes: One $150; one $200; one $200, and indorsed on same $50, March 31, 1885; one $200, and indorsed on same $50, May 19, 1885; that the above notes have been fully paid and satisfied by said defendant, and interest (has been paid) in full on said mortgage up to April 1, 1885; and that a sufficient tender on or before April 1, 1886, was made of the interest falling due on the balance unpaid on that day.

The real controversy, then, is, was the note for $200, due April 1, 1888, paid by Tennyson? The court below found against Tennyson, and entered a decree for the complainant. Abbey does not appeal.

The parties are agreed that on June 14, 1884, Tennyson paid to Baird the sum of $366.60; on March 31, 1885, $242.20; and in August or September, same year, the sum of $150, with interest on the same from April 1, 1885. When the first payment was made, the first two notes, one for $150, due April 1, 1885, and one for $200, due April 1, 1886, were delivered up to Tennyson, and considered paid. A receipt was also given him for the $366.60 paid to cancel them. When the second payment of $242.20 was made, a receipt was given for the same as being in full of interest on the mortgage to that date. It is also agreed that at the same time $50 was paid on the principal, and indorsed on the note becoming due April 1, 1887.

Baird claims that no further receipt was ever given, and but one other payment ever made on the mortgage, which was the sum of $150, and interest on the same from April 1, 1885, paid on September 23, 1885. This payment corresponds with the last one claimed by Tennyson, which he thinks was in August, 1885. Both agree that, at the time this payment was made, one note was given up to Tennyson as paid. Baird contends that it was the note due in 1887, and Tennyson claims it was the one due April 1, 1888. He swears that on May 19, 1885, he paid to Baird the sum of $200, and interest on $150 from April 1, 1885; that at the time he took up the 1887 note, which had $50 indorsed on it; and that Baird then and there indorsed $50 on the 1888 note. He produces the following receipt to substantiate this claim:

"$200. EAST MILAN, MICH., May 19, 1885.
"Received from Patrick Tennyson two hundred dollars, being payment in full of note maturing on or before the first day of April, 1887. N. D. BAIRD."

He also produces the note due in 1888, which he claims

he took up at the last payment, upon which appears the following indorsement:

" $50.00.                                        May 19, 1885.
  " Received on the within note, $50.00."

Baird denies that this indorsement is in his handwriting, but admits that a like indorsement upon the 1887 note was written by him. He also denies his signature to the receipt for $200, dated May 19, 1885. Does not know how Tennyson came into possession of the 1888 note, as he never delivered it to him, and cannot tell and has no idea how Tennyson got hold of it. All the payments, both the admitted and disputed, are claimed to have been made at the store of J. W. Meadows. Baird swears that the two receipts,—the only ones signed by him,—were written by Meadows. Meadows, when first examined on behalf of the defendant, testified that he wrote the $242.20 receipt, but that the one for $366.60 was not in his handwriting. From its appearance he thought it must have been written by C. R. Bentley, and that the one for $200 was written by him, and the signature he thought was Baird's. He could not recollect writing it, or any circumstance connected with it, or the payment of the $200 as claimed by Tennyson, but he did remember the circumstances that led to the giving of the receipt for $242.20, and remembered writing it.

Before the taking of the testimony was closed, Meadows was recalled by the defendant, and testified that he recollected the payment of the $200, and that at the time of such payment a paper was given up by Baird to Tennyson, —a note,—which had an indorsement of $50 upon it. One hundred and fifty dollars paid this note, and $50 was indorsed on another note. He is shown the note due in 1888, and thinks that is the one upon which such indorsement was made; remembers, also, the payment of March 31,

1885, at which time he wrote the receipt for $242.20. Two hundred and ninety-two dollars and some cents was paid at that time, $50 of which was indorsed upon a note. Being shown the note due in 1887, he swears that he thinks that is the note then indorsed. He thinks C. R. Bentley was present, May 19, 1885, when the $200 was paid and receipt given. He accounts for his remembrance that he has been comparing dates, and knows that he was out of the country when the first receipt of $366.60 was given; that C. R. Bentley was not present when the second receipt of $242.20 was made; and that he knows that he and Bentley were present at one time when a payment was made by Tennyson to Baird; that May 19, 1885, was the only time that he and Bentley could have been together when a payment was made. This comparison of dates, and the investigation of the matter resulting therefrom, refreshed his recollection as to the $200 payment on that date.

C. R. Bentley testifies that he was at Meadows' store when money was paid by Tennyson to Baird. Has no recollection of being called upon to do any business for them but once. His attention is called to the receipt for $366.60,—the first payment. Thinks it is in his handwriting, but does not remember anything of the transaction. Was present May 19, 1885. Saw Meadows draw and Baird sign the $200 receipt on that day, and the money paid. A note was taken up at the time, but he did not look at it, and cannot tell which note it was. He also remembers that Baird on the same day paid to him, out of the money he received from Tennyson, a payment upon a note of $1,800, which he held against John S. Williams, secured by mortgage. At first he testified this payment was $150, but upon producing the note he said it was $100.50, which corresponded with the indorsement on the note. He also testified that he was

present at the last payment in the fall, when another note was taken up.

We have carefully examined the signature of Baird to the three receipts; also the two indorsements,—one on the back of the 1887 note, and the other upon the 1888 note. We are not prepared to say that the signature to the $200 receipt and the indorsement upon the 1888 note are forgeries. From external appearances they appear to be genuine, when compared with the signatures and indorsement admitted to have been made by Baird. Unless they are forgeries, and Tennyson, Meadows, and Bentley have committed perjury, the defendant must prevail as to this $200 payment. The written evidence supports his claim, and the preponderance of the oral testimony is with him. Baird may be honestly mistaken about this payment, but Tennyson, Meadows, Bentley, and Mrs. Tennyson, also a witness for the defense, must have all committed perjury, and some one have been guilty of two forgeries, if he is not mistaken, and the disputed payment not made as claimed. It is certain that neither Tennyson nor his wife could have committed the alleged forgeries. Neither of them could write well enough, if at all, to have done this. There is shown nowhere in the evidence any motive for the commission of either forgery or perjury by either Meadows or Bentley, nor is anything evinced by the evidence against their character as honest and reputable men.

The strongest argument used against the testimony of Tennyson and his wife is this: Proof was given by several witnesses that in April, 1886, Baird and Tennyson met at the store of Meadows by appointment, as Tennyson desired to make further payment on the notes and mortgage. Tennyson asked Baird how much there was due on the mortgage. Baird answered, $2,150. Tennyson said, "I thought I had paid four notes." Baird replied,

"No, you have paid but three." Tennyson then said he would have to go home and get his papers. When he came back his wife was with him. She asked Baird to produce his mortgage, and how many notes he had got. Baird then told them that if they would produce three receipts in Meadows' handwriting he would back down, and acknowledge the payment of four notes. He asked Tennyson to show the receipts, but he did not, or would not, and Mrs. Tennyson said they had burned up the notes and the receipts. One witness testifies that afterwards, in the same talk, Mrs. Tennyson produced a receipt from her pocket, and handed it to Mr. Meadows, who said, "This is not my handwriting," and handed it back to her. She then handed him another receipt. Meadows said:

"That is my handwriting; where is the second receipt I made?"

And she replied that it was in her pocket, but she did not take it out. But whether or not Mrs. Tennyson said, at this time, that she had burned the receipts or notes, and refused or failed to produce them, can have but little bearing on the case, except as it might affect their credibility as witnesses. The fact remains that, upon the trial, the defendant produced the four notes, and a receipt for $200 in Meadows' handwriting, signed by Baird, and that the 1888 note had a $50 indorsement upon it, of date May 19, 1885, in Baird's handwriting. We say in Baird's handwriting, because it appears externally to be his, and there is no evidence, save his own, that it is a forgery. Whatever discrepancies and contradictions there are in the testimony on the behalf of the defendant, the possession and apparent genuineness of the papers in his hands remain in support and in corroboration of his claim.

73 MICH.—23.

It is claimed by Baird, and supported by the testimony of himself and wife, that their house was broken into in the spring of 1885, while they were away, on Sunday. A boy by the name of Willie Morey had lived for some time in their family, and was discharged by them in April, 1885. In April, 1887, Morey confessed that he stood guard over the house while Tennyson entered and took a paper therefrom. Morey and Tennyson were arrested for burglary and larceny. Before they were tried Morey retracted his confession, and both were ultimately discharged. Morey afterwards sued Baird for malicious prosecution. On the first trial the jury disagreed. On the second a verdict was directed for the defendant. It was attempted in this case to introduce the confession of Morey, and his testimony taken on these trials, in the presence of Meadows and Mr. and Mrs. Tennyson, that he had made such a confession, but the same was rightfully excluded by the court below as incompetent.

The testimony of Meadows, first given, in which he did not recollect anything in relation to the $200 payment, was taken before the confession of Morey, and his later evidence, that he remembered the transaction, was given after such confession. It is argued by the counsel for the complainant that Meadows in effect changed his testimony, and committed perjury, in order to save Morey and Tennyson from prosecution for burglary and larceny, as well as himself or some one else from the charge of forgery.

We cannot give heed to this argument, as there is nothing but supposition to support it. While in a civil case it is only necessary to establish the commission of a crime by a preponderance of evidence, there should, however, be testimony of sufficient weight and character

to satisfy the court or jury that a crime has been committed.    There should be no guessing at it.    In the present case, the possession of written documents and the preponderance of oral testimony show a payment of the 1888 note as claimed by Tennyson.    To overcome this we are deliberately asked to adjudge at least four persons guilty of perjury, two of burglary and larceny, and at least one of forgery.    This we cannot do upon the evidence.

The defendant Tennyson, at the last meeting of the parties, tendered the complainant the sum of $136.50, which was the full amount of interest then due, upon the theory that he had paid the 1888 note of $200.    Therefore the complainant had no right to commence foreclosure at the time he filed this bill, it being filed upon the theory that an installment of interest had become due and was unpaid, and by the default of payment he was entitled to declare the whole sum, principal and interest, due on the mortgage.

The decree of the court below is therefore vacated and set aside, with costs of both courts to the defendant Tennyson, less the sum of $136.50, which may be deducted from the amount of such costs.    A decree will be entered here dismissing complainant's bill.

The other Justices concurred.