BEAULIEU *v.* CITY OF DETROIT.

1. STREET RAILWAYS—PEDESTRIANS—REQUESTED INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS—CHANGING TRAFFIC LIGHT.

Requested instruction, that presumption obtained that plaintiff's decedent, a pedestrian about 79 years of age, thought he had time to reach a safety zone just across double streetcar tracks in middle of street where he left curb with traffic light in his favor, was properly refused as inappropriate where testimony showed deceased proceeded to cross with his head down and without looking toward released traffic and that light changed before he reached streetcar tracks and he could have remained out of way of either vehicular traffic or defendant's streetcar.

2. SAME—CHANGING TRAFFIC LIGHT—REQUESTED INSTRUCTION—
   PEDESTRIANS—CONTRIBUTORY NEGLIGENCE.

   Requested instruction embodying rule that changing of traffic
   light would not authorize motorman to proceed without waiting
   for pedestrians properly on crossing to get safely across and
   while latter might not loiter he is not required to run to his
   destination was not justified by evidence in action against street
   railway owner and operator where it is shown pedestrian might
   have safely remained in a place between the streetcar and other
   traffic instead of proceeding with his head down and without
   looking in direction of released traffic.

3. SAME—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

   In administrator's action against street railway owner and
   operator for fatal injuries to 79-year old pedestrian, evidence
   that after traffic light had changed while decedent was in
   northbound lane he continued to cross street with his head
   down and without looking in direction of released northbound
   traffic and walked into front corner of streetcar showed acci-
   dent, which occurred in the forenoon of a day early in October,
   to have been caused by want of care on part of decedent who
   was not then on crosswalk.

4. SAME—REQUESTED INSTRUCTION—SUBSEQUENT NEGLIGENCE.

   Requested instruction that if jury should find 79-year old
   pedestrian guilty of negligence in not observing change of
   traffic light while crossing street with his head down and also
   failed to notice approach of defendant's streetcar but that
   motorman was aware of pedestrian's position in time to have
   avoided fatal accident had he exercised reasonable care *held*,
   not justified by evidence where motorman who had stopped for
   traffic light saw it change while decedent was crossing street
   on motorman's right and saw pedestrian going toward track
   with place and opportunity to stop and avoid walking against
   the streetcar.

Appeal from Wayne; Webster (Clyde I.), J. Sub-
mitted April 2, 1940. (Docket No. 7, Calendar No.
40,589.) Decided June 3, 1940.

Case by Seymour B. Beaulieu, special administra-
tor of the estate of John B. Beaulieu, deceased,
against City of Detroit, a municipal corporation, and
Department of Street Railways for damages for per-
sonal injuries causing death of plaintiff's decedent

sustained when struck by a streetcar. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*John H. Dohrman* and *Curtis D. Wernette,* for plaintiff.

*Rodney Baxter* and *Leon H. Harman,* for defendants.

WIEST, J. The forenoon of October 5, 1937, John B. Beaulieu, about 79 years of age, plaintiff's decedent, while going from the east curb on Woodward avenue in the city of Detroit to take a southbound streetcar on that avenue, was struck by a northbound streetcar and fatally injured. He started to cross under the protection of a green light but the light changed before he reached the first rail of the northbound track and he kept on deflecting from the crosswalk in a northwesterly direction toward a safety zone, and was struck by the corner of a northbound streetcar.

This suit was brought by the special administrator of his estate against the city of Detroit, owner and operator of the street railway, to recover damages. Upon trial by jury defendant had verdict and judgment. Plaintiff reviews by appeal, alleging errors in the instructions to the jury and in the refusal of the court to instruct as requested by plaintiff.

At the time and point of the accident there was much vehicular northbound traffic waiting to be released by change of light and the release came while plaintiff's decedent was in the act of crossing.

A taxicab driver, bound north and awaiting change of light, was called as a witness by plaintiff and testified:

"Well, when the light changed and I seen the old fellow out there was kind of bewildered at the time,

and he started making for kind of a northwesterly direction. * * *

"Well, I started up with the green light and I slowed down, well, to a stop; then I got to the rail, and wanted to let the old fellow get through because I was the car nearest to the rail. * * *

"*Q.* You were approximately 4 or 5 or 6 feet east of the street car itself?

"*A.* Yes.

"*Q.* So that there was room between the course of your automobile and the streetcar for him to have stood, wasn't there; if he had taken one or two more steps, he would have been clear of your course, even if you hadn't changed your course?

"*A.* He would have been clear of me, yes.

"*Q.* And he still would have been clear of the streetcar?

"*A.* Yes, he would have."

Another automobile driver, also northbound, and called by plaintiff, testified:

"I, myself, I kept looking at the old man crossing there and at the same time I was starting up my car in first and second, and he was looking north on Woodward, and I knew that he didn't see me coming, or any traffic for that matter, and I had my car under full control so that I could stop if he had stopped in front of me, but he kept on going, and by that time I had gone to the right, and I knew something—he didn't turn—he didn't look south at all. * * *

"He was looking due north. The streetcar started up approximately the same time my car did, and I had gotten ahead of it, started ahead of the street car, and the motorman started to ring his bell, all the way across Forest, he was pounding on the bell, and I knew that the old gentleman hadn't turned to see us at all, and just assumed that something might possibly happen, so as I pulled by, I just slowed up my car and turned to look at him, and approximately

at that second, the streetcar hit him and also came to a complete stop; in other words, as he hit the man he stopped, there wasn't any push or anything like that at all.

"*Q.* What part of the streetcar hit him?

"*A.* The absolute corner, front corner of the right side of the streetcar.

"*Q.* I see. And state whether or not the old gentleman had stepped over the easterly rail of the northbound track at that time?

"*A.* No, he hadn't.

"*Q.* How close was he to the situation as you saw it, that is, how close was he to the rail at the time?

"*A.* Well, I should say he would probably be about a foot.      *      *      *

"*Q.* Now, as a matter of fact, Mr. Grubaugh, this old gentleman walked right into the corner of the car, didn't he?

"*A.* Yes, he did.      *      *      *      If he had been looking south, he could have stepped between the line of traffic and the streetcar.

"*Q.* There was sufficient room for that, was there?

"There was.

"There was no automobile that I saw that came to my left after this gentleman had passed my path and before the accident occurred, he would have been clear of all vehicular traffic that I saw after he had passed the line of my automobile and before he reached the streetcar track if he had stopped at that point."

Plaintiff requested the following instruction:

"I instruct you, that it must be presumed that a man of 78 or 79 years of age thinks that he has time to cross the streetcar tracks to reach a 'safety zone' a little over the middle of the street in order to reach his transfer point, if at the time he steps off the curb to cross to such 'safety zone' the green or go light is in his favor and the street is open to east and westbound travel."

A mere reading of the requested instruction shows its inappropriateness.

Plaintiff also requested the court to charge:

"I further instruct you that the laws of the State of Michigan, as promulgated by our Supreme Court (*Smarinsky* v. *Markowitz,* 265 Mich. 412), which have been applied in other States to street railway operation of cars, is the law governing this case and hereby give the exact language of the opinion:

" 'Changing of traffic signal light does not authorize motorist to proceed without waiting for pedestrians properly on the crossing to get safely across, and while pedestrian may not loiter he is not required to run to his destination.' "

The evidence in the case did not justify such an instruction.

Under the evidence it is apparent that plaintiff's decedent, after the light changed and released the traffic going north and while he was in the path thereof, proceeded with his head down and without looking in the direction of the released traffic and walked into the front corner of a streetcar. The accident was occasioned by want of care on the part of plaintiff's decedent.

Plaintiff insists that the question of subsequent negligence was involved and the court should have given the following request:

"I charge you further under the ruling in this case, that if you find that this old gentleman, plaintiff's decedent, was guilty of any negligence in not noticing the change of light and the defendant car's approach, but that the motorman of the car was aware of his position in time to have avoided the accident, had he exercised reasonable care, your verdict must be for the plaintiff in such amount as you find he is entitled to."

We find no evidence justifying the submission of the question of subsequent negligence. The motorman of the street car had stopped, along with other northbound traffic, and started up with the other traffic upon change of light. The motorman saw plaintiff's decedent going toward the track and having place and opportunity to stop and avoid walking against the streetcar and the motorman was not guilty of subsequent negligence in failing to anticipate that plaintiff's decedent would not remain in a place of safety. The instant case is ruled by the principle we applied in *DeJager* v. *Vandenberg*, 288 Mich. 136, and cases there cited.

The court was not in error in the instructions given nor in refusing the requested instructions.

The judgment is affirmed, with costs to defendant.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, McALLISTER, and BUTZEL, JJ., concurred.