THOMPSON *v.* MICHIGAN CAB CO.

Automobiles—Contributory Negligence—Question for Jury.
  In action for personal injuries received when southbound car in
    which plaintiff was riding collided with defendants' west-
    bound car between 2 and 3 a. m. on a clear January morning
    at an ice-covered intersection of two city streets each marked
    with "slow," but neither marked with "stop," signs, question
    of contributory negligence of plaintiff's driver *held*, properly
    submitted to jury, evidence being such as to permit reasonable
    men to arrive fairly at different conclusions.

Appeal from Ingham; Carr (Leland W.), J. Sub-
mitted January 6, 1937. (Docket No. 45, Calendar
No. 39,201.) Decided April 21, 1937.

Case by Lucille Thompson against Michigan Cab
Company, a Michigan corporation, and Frank Brace
for personal injuries sustained in an intersection
accident between automobiles. Verdict and judg-
ment for plaintiff. Defendants appeal. Affirmed.

*Hubbard, Rathbun & Arvidson,* for plaintiff.

*Kelley & Seelye,* for defendants.

Bushnell, J. The sole and controlling question
in this appeal arises out of the trial judge's refusal
to direct the jury to return a verdict for the defend-
ants on their claim that plaintiff's driver was guilty
of negligence as a matter of law, or to grant defend-
ants' motion for a judgment *non obstante veredicto.*

Plaintiff recovered a verdict for $850 for injuries
suffered by her in an automobile collision at the in-

tersection of North Jenison and West Michigan avenues in the city of Lansing, between the hours of 2 and 3 a. m. on January 29, 1935. Neither of these streets was a through highway but "slow" signs at the corners gave warning of danger. The weather was clear, but these two paved streets were covered with ice resulting from a rain that had fallen during the previous evening. Plaintiff's witness, Will Benjamin, testified that it was one of the most difficult nights on which to drive during the entire winter.

Plaintiff, her husband and Benjamin had just returned to Lansing from a trip to Battle Creek; they were riding in Thompson's car and due to the unfavorable road conditions the trip had consumed an unusually long time.

Just prior to the collision, Thompson's car, which was being driven by Benjamin, was proceeding in a southerly direction on Jenison approaching Michigan. Benjamin, who appears from his testimony to be the easy, willing type of witness, agreeable to everything proposed on cross as well as direct examination, testified that he stopped on the north cross-walk, lowered his left window, looked in both directions, saw no oncoming traffic and proceeded slowly into the intersection, continuing to watch for approaching vehicles. He said that he did not see defendants' cab until it was coming towards him from the left about 150 feet away. He stated that because of the icy condition of the street he could neither speed up nor stop his car in order to avoid the crash.

Benjamin was closely cross-examined regarding his view towards the east and the record indicates that a row of trees on the north side of Michigan Avenue between the sidewalk and the curb pre-

vented his view for more than 150 feet from where he stopped at the north cross-walk. We quote a portion of his recross-examination:

"*Q.* As I understand it the only thing that prevented you from seeing the cab was those trees there?

"*A.* Yes.

"*Q.* And the fact that you were in such a position on Jenison that the trees along the intersection at the left, along the street to your left, were in such a position that they blinded your view, is that it?

"*A.* Yes.

"*Q.* You could have moved two or three feet to the south and have seen farther to the east without those trees blinding your view couldn't you?

"*A.* Yes, sir.

"*Q.* So that when you had started up and had gone two or three feet south from the time you had come to a complete stop, you were then only going about a mile or so an hour, weren't you?

"*A.* Yes, I was, around three or two to three.

"*Q.* I am speaking of the point two or three feet south.

"*A.* Oh yes.

"*Q.* Until you came to a complete stop there, how fast were you going then?

"*A.* About a mile an hour.

"*Q.* About a mile an hour?

"*A.* Just starting up.

"*Q.* From that point if you had looked to your left down the street you could have seen the car couldn't you?

"*A.* Yes, sir.

"*Q.* And at that time you could have applied the brakes on your car couldn't you and brought it to a stop before going in the street?

"*A.* Yes, I could."

Standing alone, this testimony might possibly justify the claim of appellants that plaintiff's driver's negligence was a question of law. However, elsewhere in the record Benjamin's answers justify a contrary conclusion.

Under the legitimate inferences from all of plaintiff's testimony taken in its most favorable light (*Loveland* v. *Nelson,* 235 Mich. 623), did Benjamin exercise that degree of reasonable care that would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury? *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich. 99, 118.

It is an impossibility to lay down precise rules by which we may measure all acts of contributory negligence. Some cases must, of necessity, stand or fall on their own facts. What one does or fails to do as relates to the circumstances under which he acts is the test to be applied. *Flynn* v. *Kramer,* 271 Mich. 500, 505.

While no hard and fast rule exists that speed or statutory right of way is determinative of negligence as a matter of law, each driver must use such care as is commensurate with obvious conditions. *Bugbee* v. *Fowle,* 277 Mich. 485, 490.

Were Benjamin's actions those of an ordinary careful and prudent man under like circumstances? Can the minds of reasonable men differ in answering this question? If so, the evidence should be submitted to a jury. *Adams* v. *Canfield,* 263 Mich. 666. In cases of this character, it should be made very plain by the proofs that the conduct of plaintiff's driver was negligent before he should be declared to be guilty of contributory negligence as a matter of

law. *Frary* v. *Grand Rapids Taxicab Co.*, 227 Mich. 445.

We quote and adopt the following from *Railroad Co.* v. *Stout,* 84 U. S. 657:

"It is true, in many cases, that where the facts are undisputed the effect of them is for the judgment of the court, and not for the decision of the jury. This is true in that class of cases where the existence of such facts come in question rather than where deductions or inferences are to be made from the facts. If a deed be given in evidence, a contract proven, or its breach testified to, the existence of such deed, contract, or breach, there being nothing in derogation of the evidence, is no doubt to be ruled as a question of law. In some cases, too, the necessary inference from the proof is so certain that it may be ruled as a question of law. If a sane man voluntarily throws himself in contact with a passing engine, there being nothing to counteract the effect of this action, it may be ruled as a matter of law that the injury to him resulted from his own fault, and that no action can be sustained by him or his representatives. So if a coachdriver intentionally drives within a few inches of a precipice, and an accident happens, negligence may be ruled as a question of law. On the other hand, if he had placed a suitable distance between his coach and the precipice, but by the breaking of a rein or an axle, which could not have been anticipated, an injury occurred, it might be ruled as a question of law that there was no negligence and no liability. But these are extreme cases. The range between them is almost infinite in variety and extent. It is in relation to these intermediate cases that the opposite rule prevails. Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that

proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.

"In no class of cases can this practical experience be more wisely applied than in that we are considering. We find, accordingly, although not uniform or harmonious, that the authorities justify us in holding in the case before us, that although the facts are undisputed it is for the jury and not for the judge to determine whether proper care was given, or whether they establish negligence."

The court added:

"In *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich. 99, the cases are largely examined, and the rule laid down, that when the facts are disputed, or when they are not disputed, but different minds might honestly draw different conclusions from them, the case must be left to the jury for their determination."

The Michigan case cited in the foregoing authority was written long ago by a distinguished member of this court, who devoted much of his opinion to

a discussion of the question: When is a trial court warranted in instructing a jury that the plaintiff was guilty of negligence? The law, as therein stated by Mr. Justice Cooley, has been so generally cited and quoted that we forbear from further repetition.

To paraphrase the language of the *Van Steinburg Case, supra,* the instant record presents a state of facts upon which reasonable men may fairly arrive at different conclusions.

The trial court was not in error in holding that the question of plaintiff's driver's negligence was a matter for the jury. See *Pulford* v. *Mouw, post,* 376.

The judgment is affirmed, with costs to appellee.

Fead, C. J., and North, Wiest, Butzel, Sharpe, Potter, and Chandler, JJ., concurred.