BOYD *v.* MARUSKI.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

On appeal from directed verdict and judgment for defendant, plaintiff's testimony is construed in its most favorable light to her.

2. AUTOMOBILES—PEDESTRIANS—CHANGE OF TRAFFIC LIGHT.

Where a traffic signal had turned against northbound bus before plaintiff pedestrian had alighted therefrom, in the exercise of ordinary care, she was bound to anticipate that the light might change and release southbound traffic before she could complete westward crossing of 40-foot street.

3. SAME—PEDESTRIANS—TRAFFIC LIGHT—DUE CARE.

A pedestrian, crossing an intersection with the traffic light in her favor, is bound to use such care as an ordinarily careful and prudent person would use in looking for approaching traffic.

4. SAME—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—FAILURE TO OBSERVE ONCOMING TRAFFIC FROM RIGHT.

Westbound pedestrian who had alighted from northbound bus after traffic light had turned against it *held.* guilty of con-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am. Jur., Appeal and Error, §§ 886, 945.
[2] 5 Am. Jur., Automobiles, §§ 293, 308, 453.
[2, 4] Liability of owner or operator of motor vehicle for injury to person who has alighted from or is waiting for streetcar or bus. 47 A.L.R. 1233; 123 A.L.R. 791.
[3] 5 Am. Jur., Automobiles, § 453.
[3–5] Liability for accident at street or highway intersection as affected by reliance upon or disregard of traffic sign, signal or marking. 164 A.L.R. 8, at pp. 90 and 157.
[4] 5 Am. Jur., Automobiles, §§ 451, 453.
[5] 5 Am. Jur., Automobiles, §§ 451, 452.
[5] Duty of pedestrian before crossing street to look for vehicles approaching on intersecting streets. 9 A.L.R. 1248; 44 A.L.R. 1299.
[5] Duty of pedestrian crossing street or highway as regards looking for automobile. 79 A.L.R. 1073.
[5] Contributory negligence of pedestrian at street crossing as affected by statute or ordinance. 96 A.L.R. 786.

tributory negligence as a matter of law in continuing across 40-foot street after reaching the middle thereof without making any further observation as to approach of southbound vehicular traffic.

5. NEGLIGENCE—PEDESTRIAN'S DUTY OF OBSERVATION BEFORE AND WHILE CROSSING A STREET.

Before crossing a street, a pedestrian must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances.

BUSHNELL, C. J., and REID, J., dissenting.

Appeal from Wayne; Miller (Guy A.), J. Submitted January 9, 1948. (Docket No. 30, Calendar No. 43,745.) Decided April 6, 1948.

Case by Ethel M. Boyd against Joseph Maruski for personal injuries sustained when she was struck by defendant's taxicab. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Stanley S. Krause,* for plaintiff.

*Edward N. Barnard,* for defendant.

REID, J. (*dissenting*). This is an action of trespass on the case to recover damages for personal injuries which plaintiff claims she sustained through the negligence of the driver of a Checker taxicab owned by defendant Maruski and driven with Maruski's consent. At the conclusion of plaintiff's case, on motion of the defendant, the trial judge directed a verdict in favor of the defendant of no cause for action on the ground that the plaintiff was guilty of contributory negligence as a matter of law. Plaintiff appeals.

We are required in reviewing the direction of a verdict in this case to consider the facts in the light most favorable to plaintiff's claim.

Plaintiff on January 17, 1943, at about 10 o'clock p. m. had been riding on a Detroit city bus on Wyoming street going north. As the bus approached the intersection of Puritan avenue and Wyoming street, the traffic light governing traffic at the intersection was red for traffic on Wyoming. Plaintiff got off the bus on the south side of Puritan at a point where there was no designated bus stop, the driver permitting her to alight from the bus at that point. An automobile had stopped for the red light ahead of the bus but had proceeded partly into the southerly part of the intersection. Plaintiff got out of the front of the bus, which was a short distance from the intersection, and she walked around the front of the bus, between the bus and the car that was stopped ahead of the bus, and proceeded to the southerly crosswalk of Puritan avenue. She testified the light was green in her favor when she got off the bus and that when she started to walk westerly across Wyoming she saw a standing taxicab on the northwest corner of the intersection. She testified that when she arrived half-way across the street as she was walking on the crosswalk, she looked at the traffic light and that the traffic light was green in her favor, and that she saw the cab still standing at the northwest corner at that time. Plaintiff testified:

"*Q.* All right. So that when you crossed the center line of the street the light was still green in your favor?

"*A.* It was still green in my favor."

Plaintiff also testified on cross-examination:

"*Q.* When you got to the middle of the road did you * * * then go on across the road?

"*A.* I went right on, of course.

"*Q.* Then you told this court and this jury that at that point when you saw this car stop you didn't see it again until you got hit by it after you left the middle of the road?

"*A.* I walked straight on until I got hit.

"*Q.* You didn't see it again from the middle of the road until it hit you?

"*A.* · He was standing when I was in the middle of the road.

"*Q.* You didn't see it come toward you after that?

"*A.* No.

"*Q.* You didn't look to see if it was coming toward you, did you?

"*A.* I wasn't looking at the taxi. I was looking at the light."

Plaintiff further testified that she proceeded on westerly until she was struck by defendant's taxicab when about 3 or 4 feet from the westerly curb of Wyoming street. The police report of the accident was received in evidence without objection. Officer Rickard reading therefrom read, "cab had broken front headlight," and further, under the caption, "point of impact," the report contained the words, "right front," indicating that the impact was with the right front of the Checker cab.

Under the circumstances as above described, it was not contributory negligence as a matter of law for plaintiff to continue going westerly through the westerly half of Wyoming street, while continuing to observe the traffic light, but not looking at the taxicab. Her continuing to look at the traffic light is at least some evidence that she was proceeding with a continued due regard for her safety.

In *Moore* v. *Noorthoek,* 280 Mich. 431, 437, we made quotations with approval as follows:

"In *Guina* v. *Harrod,* 275 Mich. 393, this Court said:

" 'Pedestrians have the right to cross the street at street crossings even on a through street. They are not required to anticipate that drivers will violate ordinances, statutes or rules of safety.'

"In *Petersen* v. *Lundin,* 236 Mich. 590, we said:

" 'There is no rule of law requiring a pedestrian to rivet his eyes on an approaching automobile. He should look but if, having looked, it appears safe to cross, he may proceed, and his care is not to be determined solely by the fact he was struck and was not at that second looking at the automobile.' "

In the more recent case of *Werker* v. *McGrain,* 315 Mich. 287, there was testimony to show that before crossing Grand River avenue at the intersection of Oakman boulevard plaintiff observed traffic coming from the east and also the traffic lights. After the light changed to green she started across the street. When she had proceeded for about 15 feet the light turned to amber. Without stopping at the safety zone near the car tracks she hurried across. She did not recall at what point in the street she was struck, her last recollection being that she had reached the middle of the avenue. Judgment for plaintiff was affirmed.

In the case at bar there was testimony to sustain plaintiff's claim that defendant was guilty of negligence and also testimony from which the jury could conclude that plaintiff was free from contributory negligence. The weight of the evidence on those two propositions was for the jury. The court was in error in directing a verdict. The judgment appealed from should be set aside and a new trial ordered. Costs to plaintiff.

BUSHNELL, C. J., concurred with REID, J.

NORTH, J. Notwithstanding Justice REID's opinion for reversal, careful review of this record seems to

disclose that the trial judge ruled correctly in directing a verdict in favor of defendant on the ground that plaintiff was guilty of contributory negligence as a matter of law.

For the purpose of decision herein defendant's negligence will be assumed. Plaintiff's own testimony, which must be construed in its most favorable light to plaintiff, is controlling of the instant case. Her testimony discloses the following: Before she left the bus on which she was a passenger, it and other northbound traffic on Wyoming avenue had been stopped by the red traffic light at Puritan avenue. While the light was still red, plaintiff, by passing between the bus and an automobile which had stopped just north of the bus, reached the middle of Wyoming avenue. At that time the red light was against the Wyoming avenue traffic; and defendant's taxi, headed south, was standing at the northwest corner of the intersection. Plaintiff made an observation as to that being the situation. She then proceeded with the green light across Wyoming avenue, going west along the line of the crosswalk on the south side of Puritan avenue. She continued to observe the traffic light, but she did not testify that the light had not changed before she was struck by defendant's vehicle. After making her observation when in the middle of Wyoming avenue, plaintiff did not look again at defendant's taxi while she continued crossing Wyoming avenue. We quote from her testimony:

"*Q.* When you got to the middle of the road did you then go on across the road?

"*A.* I went right on, of course.

"*Q.* Then you told this court and this jury that at that point when you saw this car stop you didn't see it again until you got hit by it after you left the middle of the road?

"*A.* I walked straight on until I got hit.

"*Q.* You didn't see it (the taxi) again from the middle of the road until it hit you?

"*A.* He was standing when I was in the middle of the road.

"*Q.* You didn't see it come toward you after that?

"*A.* No.

"*Q.* You didn't look to see if it was coming toward you, did you?

"*A.* I wasn't looking at the taxi. I was looking at the light.

"*Q.* Did you look to see if it was coming toward you when you were crossing the road?

"*A.* No, I didn't look to see."

Since the traffic signal had turned red against the traffic on Wyoming avenue before plaintiff left the bus, in the exercise of ordinary care she was bound to anticipate that the light might change before she could complete crossing Wyoming avenue. But regardless of whether the light did change while plaintiff was in the act of crossing Wyoming avenue, nonetheless even with the traffic light in her favor, she was bound to use such care as an ordinarily careful and prudent person would use in looking for approaching traffic. Under her own testimony plaintiff failed to make such observation, and in that respect she was guilty of negligence which was a proximate cause of her accident. The law in this respect is not unlike the law pertaining to the duty of each of two drivers of automobiles who approach an intersection simultaneously. In *Huber* v. *Paquette,* 293 Mich. 370, a headnote reads:

"Provisions of general regulation of automobile traffic contained in city ordinance and State statute, stating that when two vehicles enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, grant no fixed rights regardless of existing circumstances as persons are required to

exercise reasonable care to save themselves from injury by reason of apparent negligence of another."

There is testimony that Wyoming avenue was approximately 40 feet wide; and some testimony that plaintiff was struck by the left hand front fender of defendant's taxi, and some that she was struck by the right front portion of the taxi. It was negligence as a matter of law for plaintiff to have continued crossing from the middle of Wyoming avenue to the point of the accident without making any further observation as to vehicular traffic approaching her from the north. Her failure to exercise such care resulted in her walking into the path of defendant's approaching vehicle.

In its essential aspects the instant case is much like *Long* v. *Garneau,* 319 Mich. 291, 299, where Justice BOYLES, speaking for the Court, said: "It is equally obvious that if plaintiff had looked to the right before taking her last few steps south of the center line of Kalamazoo street, she could have seen defendant's automobile before walking into its side. It was plainly there to be seen."

While in factual background they are not on all fours, the following cases are indicative of the law which controls decision in the instant case. *DeJager* v. *Vandenberg,* 288 Mich. 136; *Sloan* v. *Ambrose,* 300 Mich. 188; *Malone* v. *Vining,* 313 Mich. 315. In the *Malone Case* a paragraph of the headnote reads:

"Before crossing a street, a pedestrian must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances."

Plaintiff in support of her contention that an issue of fact was presented by the testimony, relies upon *Smarinsky* v. *Markowitz,* 265 Mich. 412, wherein decision turned on the issue of subsequent negligence. That issue is not presented herein. The cited case is not in point. In support of her position plaintiff also urges our decisions in *Moore* v. *Noorthoek,* 280 Mich. 431; *Neesley* v. *Lord,* 297 Mich. 163; and *Werker* v. *McGrain,* 315 Mich. 287. But in each of these cases there was testimony tending to sustain the claim that the plaintiff was free from contributory negligence; whereas in the instant case the testimony of plaintiff herself discloses that she was guilty of negligence which contributed to the accident. In the *Werker Case* we said:

"Also, there was testimony tending to show that she (plaintiff) was free from contributory negligence. * * * The conflicting testimony, together with the physical facts and circumstances, clearly presented a question of fact for the jury's determination."

My Brother quotes briefly from *Guina* v. *Harrod,* 275 Mich. 393, and *Petersen* v. *Lundin,* 236 Mich. 590. In the former case the view of both the plaintiff and the defendant was obstructed as each approached the point of accident, and this was a justification for the holding that as to the issue of plaintiff's contributory negligence an issue of fact was presented.

In the *Petersen Case* the issue of fact as to contributory negligence of plaintiff's decedent turned upon this. There was no eye witness to that factual aspect of the case, and, hence, as a matter of law, plaintiff's decedent was presumed not to have been guilty of contributory negligence. The irrelevancy of that decision to the case at bar is quite obvious.

The trial court ruled correctly in granting defendant's motion for a directed verdict at the close of

plaintiff's proofs. The judgment entered in the circuit court will be affirmed, with costs to appellee.

SHARPE, BOYLES, DETHMERS, BUTZEL, and CARR, JJ., concurred with NORTH, J.