BARRON *v.* CITY OF DETROIT.

STREET RAILROADS—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether or not pedestrian was guilty of contributory negligence *held*, to have been properly submitted to jury, where evidence shows she was at south end of safety zone north of intersection in west portion of street 90 feet wide, first saw defendant's northbound streetcar some 250 feet distant and watched it approach at speed of 20 to 25 miles an hour for 25 feet, saw an automobile approach from east and make right-hand turn to go north in front of her and proceeded east with green traffic light in her favor which was still green when streetcar hit her after she had hesitated and then proceeded east after seeing the car again momentarily when it appeared to slow down for stop at safety zone on south side of intersection, the car being some 160 feet distant at time of last observation and another westbound automobile having engaged her attention.

DETHMERS, C. J., and SHARPE and CARR, JJ., dissenting.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted October 10, 1956. (Docket No. 83, Calendar No. 46,943.) Decided April 22, 1957.

Case by Cora Barron against the City of Detroit, a municipal corporation, department of street railways, for injuries sustained when struck by streetcar. Directed verdict for defendant denied. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
38 Am Jur, Negligence § 348.

*Charfoos, Gussin, Weinstein & Kroll* and *Philip Weissman,* for plaintiff.

*James S. Shields* and *Ralph L. Hayes* (*A. Albert Bonczak,* of counsel), for defendant.

DETHMERS, C. J. (*dissenting*). Defendant appeals from denial of its motion for directed verdict and judgment for plaintiff. Construing the evidence in the light most favorable to plaintiff, she was struck, while walking across an intersection under protection of a green traffic light, by defendant's streetcar which was running against a red traffic light. Standing at the south end of a safety zone on the west side of the street and north of the intersection, she faced east intending to proceed in that direction along the north crosswalk across the intersection. She looked south, saw the streetcar, beyond the intersection, approaching from her right 250 feet distant and watched it come at a rate of speed of 20 to 25 miles per hour for a distance of 25 feet. Then she looked ahead and saw an automobile come from the east and make a right-hand turn in front of her to go north. Then, seeing the green traffic light in her favor, she started to cross. After going a few steps she hesitated, again looked to her right, saw the streetcar still approaching and watched it travel for a distance of about 5 feet at a rate of speed of 5 to 10 miles per hour, apparently about to stop at the safety zone south of the intersection. The car was then still over 160 feet away from her. She did not look at or see it again, but started walking once more, saw another automobile approaching the intersection from the east, saw that the light was still green in her favor, walked approximately 12 feet after having made her last observation of the streetcar 160 feet distant, and thereupon was struck by it.

Plaintiff says that the case which is closest on the facts is *Ortisi* v. *Oderfer,* 341 Mich 254, but that her case is stronger than plaintiff's in *Ortisi* in that (1) although Ortisi saw the light turn green in his favor before proceeding to cross the intersection he did not again look at it, while in the instant case plaintiff made a second observation of the green traffic light while crossing; (2) there were no proofs in *Ortisi* as to the width of the street plaintiff was crossing, but here it is shown to have been 90 feet; (3) it was not proved in *Ortisi* whether the light was still green in plaintiff's favor when he was struck, but that was proved at bar; (4) in *Ortisi* it was not shown what part of defendant's automobile struck plaintiff, while here it was shown that the right front of defendant's streetcar struck plaintiff. These distinctions between the facts in the 2 cases make no appreciable difference as to the law applicable.

In *Ortisi* and the later case, *Buehler* v. *Beadia,* 343 Mich 692, this Court was evenly divided on the general problem here presented, namely, should plaintiff be held guilty of contributory negligence as a matter of law or should the question of contributory negligence be held to be one of fact for the trier of the facts. Though there has been some change since in the composition of the Court, I apprehend that the division persists. In view of the full and exhaustive treatment of the law and precedents in the opinions in those 2 cases, little is to be gained from a further discussion. My view that plaintiff here should be held guilty of contributory negligence as a matter of law is supported by the analysis in the opinion written by Mr. Justice CARR in *Ortisi* and that written by Mr. Justice REID in *Buehler.* If not directly in point, at least related, are the views expressed in my dissenting opinion in *Krause* v. *Ryan,* 344 Mich 428.

I hold for reversal without new trial and with costs to defendant.

SHARPE and CARR, JJ., concurred with DETHMERS, C. J.

BLACK, J. Our decisions, apparently, are destined in definable instances to travel a cyclic course. This case, like impending return to earlier interpretations of the workmen's compensation act, becomes as wholesome restoration of tried and dependable first principles of negligence law.

Conventional traffic control signals came to us following advent of the automobile and its paved way of travel. Originally, and I think rightfully so, this Court held that one undertaking to cross a street or highway by signaled permission of such a device is not required—as a matter of law—to assume that one in charge of a powered vehicle, approaching the device on an intersecting way, will do other than heed the legal command. Indeed, it was said on that occasion that the person engaged in such permitted crossing has good reason to believe he is protected from danger, "by the red light," so far as concerns traffic approaching such light (*Travis* v. *Eisenlord,* 256 Mich 264). The rule is both sensible and necessary. It is taught with religious repetition in home and kindergarten and has become a generally understood regulation of human conduct.

That we have temporarily deviated from *Travis* is apparent on examination of *Morse* v. *Bishop,* 329 Mich 488. That we stand deadlocked, upon right of trial by jury in cases of present nature, becomes evident on examination of *Ortisi* v. *Oderfer,* 341 Mich 254; and *Buehler* v. *Beadia,* 343 Mich 692. It is high time, I think, that we return to the doctrine so enunciated in *Travis.* Such is at least explainable to the reasonable and intelligent lay mind. Law not so ex-

plainable—the *Morse Case* is an example—is not good law.

In all negligence cases, brought here to review grant or denial of motion for instructed verdict addressed to contributory negligence, we search the record to determine whether, as a matter of law, the plaintiff has failed to prove that he exercised ordinary care. Because "ordinary care is the care exercised by the great mass of mankind" (*Sonsmith* v. *Pere Marquette R. Co.*, 173 Mich 57, 90; 65 CJS, Negligence, § 11, p 392), we shall rarely find the elusive object of our search excepting we arbitrarily insist on doing so from our own "experience, training and temperament," the known and unknown variables being what they are (3 Cooley on Torts [4th ed], p 389; *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99). Our competence in such regard fades when arrayed against the comparably better experience and judgment of 12 citizens of the community who, literally, are "on location." Who knows best the degree of care most pedestrians—the great mass of mankind—habitually exercise at busy and signal-controlled Detroit intersections? Eight cloistered gentlemen of the law whose direct fact-knowledge must of necessity be derived from second-hand worth of printed pages, or a jury of Detroit housewives, clerks, wage earners and provincial citizens having regular occasion to use such intersections for motoring and pedestrian travel? I answer that in all but the rarest of cases the former are less apt to be rightly equipped to decide such an issue. Mr. Justice COOLEY proceeds with the syllogism this way (p 120 of *Van Steinburg* report):

"For, when the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his opinion of what a reasonably

prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. It is quite possible that, if the same question of prudence were submitted to a jury collected from the different occupations of society, and perhaps better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care. The next judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be one of law. Indeed, I think the cases are not so numerous as has been sometimes supposed in which a judge could feel at liberty to take the question of the plaintiff's negligence away from the jury."*

The same reasoning, taken from *Van Steinburg* (see *Thompson* v. *Michigan Cab Co.,* 279 Mich 370, 374), was adopted many years ago by the Federal supreme court in *Railroad Company (Sioux City & Pacific R. Co.)* v. *Stout,* 84 US 657 (21 L ed 745). The following is quoted from pages 663 and 664 of report of the *Stout Case*:

"Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of

---

* It will be noted that Justice COOLEY was dealing with another case where a pedestrian was struck, on a railroad track, under circumstances where the problem of contributory negligence was (p 119) "complicated by the necessity of taking into account the 2 sets of circumstances affecting the conduct of different persons"—the engineer (or, as here, the motorman) on the one hand and the pedestrian on the other. See discussion of *Van Steinburg* in *Clark* v. *Shefferly,* 346 Mich 332, 336; and *Ohman* v. *Vandawater,* 347 Mich 112, 116, 117.

education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain."

This unfortunate accident occurred while the plaintiff was crossing one of the busy street intersections of Detroit. Whether, tested by this motion for instructed verdict, Cora Barron was engaged in the exercise of ordinary care, proceeding as she was with permission and authority of the then green traffic signal, was at best a question upon which reasonable men—I repeat "reasonable men"—might well differ. If so, and such is our heralded guide (*Thompson* v. *Michigan Cab Co., supra*), the trial judge was right in refusing to direct a verdict for defendant, and right in his refusal to enter judgment for defendant contrary to the jury's verdict.

It is said that the trial judge erred in instructing the jury as follows:

"Now, in that connection it is the law that before you start across the street you must look to see if you can do so in safety, but having started on a green light and having looked to make sure whether you can cross in safety, and then having started to cross on the green light, it becomes a question of fact for the jury to determine, whether if the light is still green at the time of the accident, whether or not an ordinary, prudent person would have looked again to the south to see where the streetcar was. That becomes a question of fact for the jury. * * *

"If you find, as I say, that she started on the green light; that she started across, she looked and saw the streetcar slowing down, and I think all of the testimony is that the streetcar stopped, the streetcar conductor himself said he stopped, and she looked and

saw the streetcar slowing down, she started on the green light, the light was green, then it is up to the jury to determine as a matter of fact what the ordinary, prudent person would have done under those circumstances. Would he have looked again or relied on the green light and proceeded across without looking again."

In view of what has been said above, I discover no reversible error in the charge as quoted.

I vote to affirm, with costs to plaintiff, and for due interment of *Morse* v. *Bishop, supra;* and *Boyd* v. *Maruski,* 321 Mich 71.

SMITH and EDWARDS, JJ., concurred with BLACK, J.

KELLY, J., concurred in affirmance.

VOELKER, J., took no part in the decision of this case.