STILLWELL v. GRUBAUGH.

1. AUTOMOBILES — INTERSECTIONS — TRAFFIC LIGHTS — CONTRIBU-
TORY NEGLIGENCE — QUESTION FOR JURY.
Whether or not plaintiff, westbound motorist in north lane of
4-lane highway, who had stopped for traffic light was guilty
of contributory negligence in proceeding into northbound
lanes of intersecting 4-lane highway after change of the light
*held,* question for jury in his action against northbound
motorist who crashed into plaintiff's car.

:2. SAME—INTERSECTIONS—TRAFFIC LIGHTS.
A motorist cannot .totally disregard the circumstances that exist
at the time he approaches an intersection governed by a
traffic light but he has good reason to believe he is protected
from danger .by the red light so far as traffic approaching
the light.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
. The facts in relation to plaintiff's negligence should be very
clear to warrant deprivation of a citizen's right to a jury trial.

4. SAME—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT—JUDGMENT
NOTWITHSTANDING VERDICT.
Neither a motion for directed verdict nor for judgment for de-
fendant notwithstanding verdict for plaintiff will be granted
on the issue of latter's contributory negligence, where evidence
as to it presents a question of fact.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 5A Am Jur, Automobiles and Highway Traffic § 1067.
Liability for accident at street or highway intersection as
affected by reliance on or disregard of traffic sign, signal, or
marking. 164 ALR 8.
[3] 38 Am Jur, Negligence §§ 335, 336.
[4] 38 Am Jur, Negligence § 348.
[5] 5A Am Jur, Automobiles and Highway Traffic § 1097.
[6] 5A Am Jur, Automobiles and Highway Traffic §§ 991–993.

5. AUTOMOBILES—INTERSECTIONS—TRAFFIC LIGHT—INSTRUCTIONS.

Claim of error in instruction in automobile accident case arising from collision at an intersection controlled by a red and green traffic light that was premised on the idea that plaintiff did not have the right to rely upon the fact that he was protected to his left when he entered intersection with the green light in his favor *held,* without merit.

6. SAME—INTERSECTIONS—EVIDENCE—CONCLUSIONS.

It was not an abuse of discretion to permit a witness to an automobile accident at an intersection controlled by a traffic light to testify he did not think that northbound defendant could have entered the intersection before the light turned in favor of westbound plaintiff and the witness who was in car in the south westbound lane alongside plaintiff's car, had testified as to the length of time the car in which he was riding had stopped, waiting for the light to change, that such car had not started up immediately subsequent to the change of light and the distance it had traveled before the impact between defendant's and plaintiff's cars, since such witness had given the facts upon which his alleged conclusion was based.

DETHMERS, C. J., and CARR, J., dissenting.

Appeal from Gratiot; Cash (Paul R.), J. Submitted April 16, 1959. (Docket No. 49, Calendar No. 47,792.) Decided October 12, 1959.

Case by Don Stillwell and Preferred Insurance Company, subrogee, against Lawrence Grubaugh for property damage resulting from automobile collision. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Netzorg & Plaxton,* for plaintiffs.

*Karl E. Mikko,* for defendant.

KAVANAGH, J. Plaintiffs brought this action in the circuit court for the county of Gratiot to recover alleged damages to plaintiff Stillwell's automobile in a stipulated amount of $835.99.

Plaintiffs alleged that defendant was guilty of negligence which was the proximate cause of plaintiff Stillwell's damages; that plaintiff Stillwell was free from contributory negligence; and that the negligence of the defendant was a violation of CLS 1956, § 257.611 (Stat Ann 1952 Rev § 9.2311) in failing to observe the traffic light.

Defendant answered denying negligence on his part and claiming plaintiff Stillwell was guilty of contributory negligence by reason of the fact he entered the intersection without making proper observation that he could do so safely contrary to the statute.

The case was tried to a jury. At the conclusion of plaintiffs' proofs and at the close of all proofs, defendant made a motion for a directed verdict of no cause for action on the theory that plaintiff Stillwell was guilty of contributory negligence. This motion was denied. The jury returned a verdict in the amount of $835.99, the amount of the damages having been stipulated. Defendant then made a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The circuit judge denied this motion.

Defendant appeals and contends:

(1) The court erred in not directing a verdict for the defendant on the ground of contributory negligence on the part of plaintiff Stillwell as a matter of law.

(2) The court erred in refusing to render a judgment notwithstanding the verdict, or, in the alternative, to grant a new trial.

(3) The court erred in its instructions to the jury.

(4) The court erred in permitting into evidence a portion of the testimony of one of plaintiffs' witnesses.

The accident out of which this action arose took place in the city of St. Johns, Michigan, at the

intersection of highways M–21 and US–27, at about
2:30 p.m. on January 31, 1957. Traffic at this inter-
section is governed by the usual intersection traffic
light. Plaintiff Stillwell was traveling in a westerly
direction on highway M–21. As he approached the
intersection he observed the light was red and he
made a stop in the extreme north lane of M–21.
Both M–21 and US–27 are 4-lane highways at this
point, permitting 2 lanes of traffic to travel each way.
Immediately to the left of plaintiff Stillwell when
he completed his stop was another motor vehicle
stopped parallel to him awaiting a change of the
light from red to green so that they might pass into
the intersection.

Plaintiff Stillwell testified as follows:

"*Q.* Now Mr. Stillwell when you came to that light
was the light just changing or was it necessary for
you to come to a complete stop there?

"*A.* I had to come to a complete stop.

"*Q.* You stopped all the way on there?

"*A.* Stopped dead, yes.

"*Q.* All right, then what happened?

"*A.* Well, when the light changed I proceeded on
out to the highway.

"*Q.* When the light changed from—

"*A.* My direction.

"*Q.* The light changed, in other words it went
from red to green?

"*A.* That's right.

"*Q.* And you proceeded on. Now in which direc-
tion were you going?

"*A.* I was headed straight west.

"*Q.* And you proceeded out into the intersection?

"*A.* Out into the intersection.

"*Q.* What happened at that time?

"*A.* I don't remember. All I know is that I was
suddenly hit from the left side."

Under cross-examination he was questioned as
to whether or not he had looked to the north or

to the south. The following constitutes his testimony in this regard:

"*Q.* Then when it turned green you moved out in the intersection?

"*A.* That's right.

"*Q.* Did you look to the north on US–27 before you moved out?

"*A.* I don't remember whether I looked north or not.

"*Q.* Did you look south on US-27?

"*A.* I don't recall that either.

"*Q.* How far into the intersection had you gotten when the impact occurred?

"*A.* Just about into the line of traffic that was headed north."

Merlin Durbin, a disinterested witness who was riding in the automobile to plaintiff Stillwell's left, testified the driver of the automobile in which he was riding stopped because the light was red; that he noticed plaintiff Stillwell's vehicle stopped in the lane immediately to the right from the automobile in which he was riding. He further testified that when the light changed to green the vehicle in which he was riding started up and moved just a few feet, at which time the driver slammed on the brakes and defendant's automobile passed in front of them and crashed into plaintiff Stillwell's automobile. He testified that the vehicle in which he was riding did not start until after the red light had turned to green; that the Stillwell automobile did not move until the light turned green.

Mr. Durbin was called for rebuttal testimony and testified as follows:

"*Q.* Will you tell the jury what that discussion was please?

"*A.* Well, after we made our left turn we got out of our vehicle we was riding in, and they come over to take our names for a witness; and during

the discussion why I asked Mr. Grubaugh why he run the light, or what made him go through it, or something like that I said; and he made the statement, 'I didn't see the light.' "

Defendant Grubaugh testified on direct examination that the visibility was good; that he had power brakes; that he was traveling north on US–27 at approximately 30 miles per hour; that he had first observed the traffic light about 40 feet before he entered the intersection and it was green at that time; that he last observed the traffic light when he was about 10 feet south of the curb before entering the intersection and it was green at that time. He further testified that he continued on into the intersection and he noticed 2 other vehicles near the intersection headed west on M–21 and stopped for the light. He testified that he did not see the automobile in which witness Durbin was riding move at all; that he first noticed the Stillwell automobile when he was approximately the length of an automobile to the south of the Stillwell automobile and the Stillwell automobile was then about 8 to 10 feet into the intersection.

Under cross-examination defendant Grubaugh testified as follows:

"*Q.* Well, supposing that you come up to a green light and that green light is changing, it changes from green to amber?
"*A.* Yes.
"*Q.* Which is caution?
"*A.* That's right.
"*Q.* And then to red and stop, does it not?
"*A.* Yes sir, that's right.
"*Q.* And then when it comes time to change again it changes directly from red to green, does it not?
"*A.* Yes.

"*Q.* Now as I understand it you first—or, you last observed the traffic light when you were 10 feet to the south of the intersection?

"*A.* Yes.

"*Q.* At that time it was green?

"*A.* That's right.

"*Q.* You first observed Mr. Stillwell's car proceeding into the intersection when you were still a car length away from it, is that right?

"*A.* Oh, I believe I said a third of a car.

"*Q.* A third of a car. In other words then Mr. Grubaugh this light changed from green to amber to red while you were traveling from a point south of the intersection until you were down into the intersection, is that what you want us to believe?

"*A.* I didn't run a red light.

"*Q.* Now will you answer my question. Is that what you want us to believe? We will come to that. * * *

"*Q.* You wish us to believe that in the point 10 feet south of the intersection down into the intersection there was time for that traffic signal to change from green to amber to red?

"*A.* No.

"*Q.* And also for this car to pull out into it?

"*A.* No, I don't think so.

"*Q.* Well now, you have heard Mr. Stillwell say that the light turned to green before he ever got out in here, before he ever started to move, didn't you?

"*A.* I think that is what he stated.

"*Q.* Well, your light had turned from green to amber to red from the time you last observed it until you got down to this point in the intersection?

"*A.* I had—

"*Q.* Now, as a practical matter, wasn't it considerably further south than 10 feet when you last observed that light?

"*A.* No, it wasn't."

Clearly, under the above testimony, a question of fact existed as to whether plaintiff Stillwell had

acted as an ordinary careful and prudent man under the circumstances. While it is true that one cannot totally disregard the circumstances that exist at the time he approaches and enters an intersection that is governed by a traffic signal, he has good reason to believe he is protected from danger by the red light so far as traffic approaching the light. If one crossing with a green light cannot depend upon the safety the law affords him, but must wait each time to see whether the driver approaching the red light will observe the light and stop, he may find himself in a dangerous position, particularly if the light changes against him before he has completed his trip across the street. *Travis* v. *Eisenlord,* 256 Mich 264; *Barron* v. *City of Detroit,* 348 Mich 213. In so far as *Boyd* v. *Maruski,* 321 Mich 71, and *Morse* v. *Bishop,* 329 Mich 488, are in conflict with the rule as established in this case and in *Travis* v. *Eisenlord* and *Barron* v. *City of Detroit,* the *Boyd* and *Morse Cases* are overruled.

Mr. Justice BLACK spoke for a majority of the Court in *Barron* v. *City of Detroit, supra,* where he compared the ability of a jury to determine the question as opposed to a court, and said (p 217):

"Our competence in such regard fades when arrayed against the comparably better experience and judgment of 12 citizens of the community who, literally, are 'on location.' * * * I answer that in all but the rarest of cases the former (court) are less apt to be rightly equipped to decide such an issue."

Justice EDWARDS in *Ware* v. *Nelson,* 351 Mich 390, 397, said:

"The facts in relation to plaintiff's negligence should be very clear to warrant our depriving a citizen of his right to a jury trial."

· In the case of *Landon* v. *Shepherd,* 353 Mich 500, 508, the Court said:

"Were plaintiff's actions those of an ordinary careful and prudent man under like circumstances? Can the minds of reasonable men differ in answering this question? If so, the evidence should have been submitted to the jury. *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99; *Adams* v. *Canfield,* 263 Mich 666; *Davis* v. *New York Central R. Co.,* 348 Mich 262."

Clearly, with the dispute and conflict of testimony in this case, the court did not err in refusing to grant the motion for a directed verdict or in submitting the case to the jury.

The reasoning applied in answer to the first question satisfactorily disposes of the second question as to whether the court erred in refusing to render a judgment notwithstanding the verdict.

The third error alleged by appellant is with reference to the instructions to the jury. In view of our ruling with respect to the duty of plaintiff Stillwell in this case and the reliance he had a right to make upon the fact that the light was red for approaching traffic on US–27 from the south, the argument of appellant with respect to the charge, on the face of it, must fail. It is built upon a false premise that *plaintiff did not have the right to rely upon the fact that he was protected to his left.* Therefore, reading the instruction complained of together with the rest of the charge, in view of what has been said above, we discover no reversible error in the charge given. A comparison of the charge in this case and the charge in *Barron* v. *City of Detroit, supra,* discloses that almost the exact words were used. At page 220 of that decision Justice BLACK said:

"In view of what has been said above, I discover no reversible error in the charge as quoted."

The remaining position relied upon by defendant for reversal is that the trial court erred in permitting into evidence alleged conclusion testimony on the part of one of the witnesses.

Witness Durbin was asked the following question and made the following answer:

"*Q.* Now would you say that this car (defendant's) could have started into the intersection before the light turned, the car coming from Lansing?

"*A.* No, I don't think he could of."

Defendant contends that permitting this question and answer to stand over his objection was error in that this testimony was opinion evidence which pervades the province of the jury.

Control of such testimony is largely a matter of discretion with the trial court. Undoubtedly it is true that witnesses should not in general be allowed to state conclusions, although this rule is qualified (*Zuidema* v. *Bekkering,* 256 Mich 327), and where a witness gives fully and definitely the facts upon which a conclusion is based, there is no presumption of prejudice.

In the instant case witness Durbin had previously testified that he was riding in the automobile immediately to plaintiff Stillwell's left and the automobile in which he was riding was stopped waiting for the light to change. He had described the length of time the automobile in which he was riding was stopped, the fact that the automobile had not immediately started up subsequent to the change of the light. He had further testified as to the approximate distance the automobile in which he was riding had moved before the impact. The witness, having given the facts upon which the alleged conclusion was based, makes the statement more one of fact than a conclusion, and its admission was within the discretion of the court. *Vezina* v. *Shermer,* 198 Mich 757.

No reversible error was committed in receiving this testimony.

Judgment affirmed, with costs in favor of plaintiffs.

Smith, Black, Edwards, and Voelker, JJ., concurred with Kavanagh, J.

Dethmers, C. J. (*dissenting*). I do not concur in affirmance. In both *Ortisi* v. *Oderfer,* 341 Mich 254, and *Buehler* v. *Beadia,* 343 Mich 692, in which this Court divided equally, the opinions set forth many of the Michigan decisions relating to the duty reposing on one crossing an intersection under protection of a green traffic light to make and maintain a reasonable and proper lookout for approaching traffic and holding him, for failure therein, to be guilty of contributory negligence as a matter of law. It is suggested that that division on this Court and the problem involved were resolved by the opinion for affirmance in *Barron* v. *City of Detroit,* 348 Mich 213, concurred in by 3 of the Justices, with its result concurred in by a fourth, 3 Justices dissenting and 1 taking no part in the decision. It is to be observed that in *Barron* the question presented was whether plaintiff, after having observed all approaching traffic and concluded that she could cross the intersection in safety, was under the duty of continuing such observation while crossing with the light green in her favor. The affirming opinion (p 219) approved the instruction of the trial court that:

" 'Now, in that connection it is the law that before you start across the street you must look to see if you can do so in safety, but having started on a green light and having looked to make sure whether you can cross in safety, and then having started to cross on the green light, it becomes a question of fact for the jury to determine, whether if the light is still

green at the time of the accident, whether or not an ordinary, prudent person would have looked again to the south to see where the streetcar was.' "

The instant case is different. Here there is a complete lack of showing that plaintiff looked either to the right or left before entering the intersection or at any time thereafter. He testified that he had no recollection of having done so and that he never saw defendant at all before the impact. He made no effort, as an ordinary, careful and prudent person would have done under like circumstances, to look and to ascertain whether a vehicle was approaching from his right or left at such speed or in such manner or so near the intersection at the instant the light changed that such vehicle could not or might not be able to stop short of the intersection. Had he looked and acted as did the driver of the automobile alongside and immediately to his left, no accident would have occurred. Not yet has this Court held that on precisely such facts plaintiff is not guilty of contributory negligence as a matter of law. If it is to be the law in Michigan that one entering an intersection under cover of a green traffic light may do so without making any observation of approaching traffic whatever, literally with eyes closed to everything but the traffic light, and yet escape being held guilty of contributory negligence as a matter of law, here is the case which affords the opportunity for its announcement. It is a view I do not share.

Defendant was entitled to a directed verdict of no cause for action. The judgment should be reversed, without new trial and with costs to defendant.

CARR, J., concurred with DETHMERS, C. J.

BLACK, J. (*concurring*). The Chief Justice has written in this case consistently with that which appears over his signature in *Boyd* v. *Maruski,* 321

Mich 71; *Morse* v. *Bishop,* 329 Mich 488; *Ortisi* v. *Oderfer,* 341 Mich 254; *Buehler* v. *Beadia,* 343 Mich 692, and *Barron* v. *City of Detroit,* 348 Mich 213. The doctrine espoused by him in such previous cases has prevailed or failed by the gossamer weight of manufactured fantasy; that of arbitrary assumption—as in this case—that the luckless plaintiff has entered or proceeded into and upon the intersection or crosswalk "literally with eyes closed to everything but the traffic light."

This word-picture, of a motorist proceeding forward like a bridled horse with special over and under as well as side blinders affixed, seems a bit overstretched. The human eye (unlike most cameras) is not equipped with a rotary shutter, and the unsupported suggestion that Mr. Stillwell proceeded into this 4-and-4-lane intersection with vision thus peripherally limited offends our rule of favorable view. True, if Mr. Stillwell actually had testified—much though such testimony might tax our credulity—that he was guilty of any such vision-restrictive effort, I would agree that the question of contributory negligence in this case would have been one for the court rather than the jury. But there is no such testimony, and certainly no right on our part to infer that Mr. Stillwell's conduct was so well-nigh impossible. It would require a consciously steady and difficult squint of the eyes to so restrict—if one could do it at all—the orbital focus of normal driving vision and, assuming that it was within the province of the triers of fact to draw such an inference from Stillwell's testimony, the most that can be said of its evidentiary utility is that due appraisal thereof was made in the Gratiot county circuit court jury room.

I do not believe in lip service of our requirement of favorable view when the defendant in a negligence case moves for an instructed verdict on assigned ground of contributory negligence. See in such re-

gard the vigorous comment of the court of appeals of the 6th circuit in *Patterson* v. *Pennsylvania R. Co.* (CCA 6), 238 F2d 645 (a case arising under and determinable by the Michigan law of contributory negligence).* Neither do I regard it a proper function of this Court to presume or guess that the scope of vision of a licensed motor vehicle operator has been so confined. Rather, I suggest that it is our obligation to assume—in the course of test of this motion for directed verdict—that the plaintiff motorist's gaze ahead included, within the zone of fairly required watchfulness, not only the traffic signal but that which, in the judgment of fair appraisers of fact, is reasonably expectable and possibly avoidable in and near the peripherally viewable path of travel ahead.

This brings us to the real crux of our continuing disagreement; the controversial doctrine that the degree of ordinary care, exacted of a motorist to protect himself from injury in like circumstances, requires as a matter of law that he constantly swivel his head and eyeballs from one side to the other as he proceeds into an intersection by authority of "the green light." Such—in the language of the Chief Justice—"is a view I do not share." My reason, so far as precedent is concerned, goes back to intelligent and reasonable authority.

Back in 1951, no one of the undersigned being around to object at the time, this Court speaking through the present Chief Justice cavalierly cast aside (in *Morse* v. *Bishop, supra*) that which—surely

---

* Having quoted at length from Justice COOLEY'S opinion in *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99, the court of appeals went on to say (page 650 of *Patterson's* report):

"Some of us have noted a modern tendency—perhaps a growing one—to give mere lip service to these sound principles. Trial by jury is our established constitutional safeguard against assumption of unwarranted judicial authority and should be honored by steadfast observance rather than discarded by dictatorial breach."

to the traffic-signal-familiar layman at least—is the common sense of *Travis* v. *Eisenlord,* 256 Mich. 264. I refer to these passages (pp 265, 266 of *Travis'* report).

"The court was wrong in holding that the plaintiffs were guilty of contributory negligence as a matter of law. If he were correct in so holding, it would mean that the driver of the plaintiffs' car must at his peril assume that the defendant would disobey the law and rush the red light. The contrary is true. He had a right to assume that defendant understood the red signal and that he would not undertake to make the crossing until it had changed to green. If he had looked, as the court says he should have done, it is true that he would have seen the defendant approaching, but he would have had a right to rest on the assumption that defendant would stop before the red light and wait until it had changed."

*Travis'* doctrine, like old time religion, is good enough for me. It became the linchpin of that which, in *Barron,* brought confirmation of denial of a demand for directed verdict by another adjudged violator of the lawful command of a traffic signal. Thus, by force of the foregoing opinion of Mr. Justice Kavanagh, it definitely may now be said—in paraphrase of the Chief Justice—that it is the law of Michigan that one entering an intersection under beckon of a green light may and should escape being held guilty of contributory negligence (as a matter of law, of course) even though it be affirmatively shown that he did not—at any time—turn his head or his gaze to the left or the right to discover possible approach of another motorist engaged in violating what is now a universally known law of traffic control. The reason, given in *Travis,* is that a motorist proceeding under such "go" signal has good reason to believe that he is protected from danger in the direction or directions faced by red lights while

the signal light facing him is green. Whether, and at what stage, he is required to abandon reliance on such protection and go into emergency action is, at best and as against a motion for directed verdict assigning contributory negligence, a question for the trier or triers of fact.*

I concur in Mr. Justice KAVANAGH's opinion.

SMITH and VOELKER, JJ., concurred with BLACK, J.

KELLY, J. (concurring). Ortisi v. Oderfer (1954), 341 Mich 254, and Buehler v. Beadia (1955), 343 Mich 692, each affirmed the trial court and reaffirmed the early Michigan decision of Travis v. Eisenlord, 256 Mich 264.

In the Ortisi decision, Justice BUTZEL, after commenting upon the fact that if the traffic light affords no protection to pedestrian or driver then their duties are the same as though the light did not exist, expressed himself on this point as follows (p 259): "This cannot, and should not, be the case. The light must afford some protection. The question is—how much?"

Justice BUTZEL answered his question of "how much" in both Ortisi and Buehler, by stating:—That a driver or a pedestrian crossing an intersection with

---

* If it were necessary to excuse, as against this motion for directed verdict, Mr. Stillwell's omission of gaze or glance to his left before starting forth into the intersection, such excuse would not be difficult in point of fact. Because M–21 (likewise US–27) was a 4-lane highway at the point of intersection, 2 westbound cars drew up abreast (for the then red light) at the eastern boundary of the intersection. One was Mr. Stillwell's car. It was in the northernmost lane of M–21. Both westbound cars started forward when the traffic signal changed to green. Thus it is easy to perceive why Mr. Stillwell did not see the approach of defendant's northbound car as soon as did the westbound driver at the left. Stillwell could not see it, until the situation had become one of unavoidable collision, because the other westbound car blocked his vision until the last and too-late moment. This, at least, is my notion of favorable view of the testimonial record.

a green light in his favor has a right to assume that the defendant will not disobey the law and rush the red light;—if the driver or pedestrian had looked and seen defendant approaching he or she would have the right to rest on the assumption that the defendant would stop before the red light and wait until it had changed;—a green light is an invitation to a pedestrian or a driver to proceed across the street and the red light is a command to stop until the light turns green;—whether plaintiff is pedestrian or driver of a car, if he is struck and injured while crossing the intersection under protection of a traffic light, he is not negligent as a matter of law even in the absence of testimony that he attempted to observe approaching vehicles;—if the crossing at the intersection is being made with a favorable green light, the question of contributory negligence is a jury question, namely: Did plaintiff attempt the crossing in the face of a peril that was reasonably apparent?

That this principle is recognized beyond the confines of this State is evidenced by the following from 164 ALR 8, 234:

"One entering a street or highway intersection with a green light, semaphore go signal, or officer's gesture to proceed is entitled to assume that persons on the intersecting street will obey the unfavorable signal facing them; while this does not excuse the person enjoying the favorable signal from acting with reasonable care in the light of all the circumstances, it does tend to make the question whether he exercised such care in the manner with which he entered or passed over the crossing one for the trier of the facts, and the view has accordingly been taken under the facts involved in numerous cases that the circumstance that one charged with negligence or contributory negligence entered the intersection where the accident occurred with the traffic signal in

his favor operates, or at least tends, to prevent a holding that he was guilty of negligence or contributory negligence as a matter of law, despite a showing that he was guilty of acts or omissions which might otherwise have justified that conclusion."

The early Michigan decision of *Travis* v. *Eisenlord, supra* (relied upon and which formed a base for *Ortisi* and *Buehler*), was recognized and approved in 1945 by the California district court of appeals in *Taylor* v. *Sims,* 72 Cal App 2d 60, 63, 64 (164 P2d 17), wherein it was stated:

"Since the intersection here involved was controlled by an electric traffic signal plaintiff was not required to look into the cross streets before entering the intersection. The signal permitted him to move in an easterly and westerly direction. The rule being that where the intersection movement of traffic is governed by signaling devices the determination of the question as to whether the one driver or the other is responsible for a collision at the intersection depends primarily upon the showing as to whether one vehicle or the other was being operated in conformity with the signal. The driver proceeding pursuant to the 'Go' signal is not to be deemed negligent because he fails to maintain a lookout for a vehicle which might enter the intersection in violation of the signal. (*Travis* v. *Eisenlord,* 256 Mich 264; *Church* v. *Shaffer,* 162 Wash 126, 129 [297 P 1097, 1098]; *cf. Randall* v. *Evans,* 4 Cal App 2d 575, 576 [41 P2d 561].)"

I concurred with Justice BUTZEL in the *Ortisi* and *Buehler* decisions, and I concur with Justice KAVANAGH in this appeal.